KEKER & VAN NEST LLP
ASHOK RAMANI - # 200020
aramani@kvn.com
R. JAMES SLAUGHTER - # 192813
rslaughter@kvn.com
SIMONA A. AGNOLUCCI - # 246943
sagnolucci@kvn.com
ERIN E. MEYER - # 274244
emeyer@kvn.com
633 Battery Street
San Francisco, CA 94111-1809
Telephone:    415 391 5400
Facsimile:     415 397 7188

Attorneys for Defendant
CAVIAR, INC. d/b/a TRY CAVIAR

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JEFFRY LEVIN, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>CAVIAR, INC. d/b/a TRY CAVIAR,<br><br>Defendant. | Case No. 3:15-cv-01285-EDL<br><br>**DEFENDANT CAVIAR, INC. D/B/A TRY CAVIAR'S MOTION TO COMPEL INDIVIDUAL ARBITRATION AND MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date:        August 4, 2015<br>Time:       9:00 a.m.<br>Dept.       Courtroom E – 15th Floor<br>Judge:      Hon. Elizabeth D. Laporte<br><br>Date Filed: March 19, 2015<br><br>Trial Date:  None set |

# **TABLE OF CONTENTS**

**Page**

I.   INTRODUCTION ...................................................................................................1

II.  FACTUAL AND PROCEDURAL BACKGROUND...........................................2

    A.   Couriers are required to agree to the Courier Terms and Conditions—
which includes an unambiguous arbitration clause—prior to accepting their
first delivery. ........................................................................................2

    B.   Levin accepted the Courier Terms and Conditions prior to making
deliveries using the Caviar mobile application. ....................................3

    C.   Just a few months later, Levin reaffirmed his acceptance of the Courier
Terms and Conditions. ..........................................................................4

III. ARGUMENT ........................................................................................................5

    A.   This Court should compel individual arbitration of Levin's claims. ......5

        1.   Levin and Caviar consented to final and binding arbitration by
agreeing to the Courier Terms and Conditions. ............................5

        2.   The Courier Terms and Conditions are presumed valid and
enforceable under the FAA. ..........................................................8

        3.   All causes of action asserted in the Amended Complaint fall within
the scope of the arbitration provision in the Courier Terms and
Conditions. ....................................................................................9

        4.   Any argument by Levin that adding a PAGA claim takes this case
out of arbitration lacks merit.......................................................11

            a.   Levin may argue that California state law prohibits
individual arbitration of his PAGA claim. ......................11

            b.   Under well-settled federal law, state law conflicting with the
FAA's mandate is preempted...........................................12

            c.   A wide majority of federal courts in California reject
*Iskanian* and order PAGA claims to arbitration. ............13

    B.   The Court should dismiss this action because all claims are subject to
arbitration. ...........................................................................................15

IV.  CONCLUSION....................................................................................................15

1

# TABLE OF AUTHORITIES

2

**Page(s)**

3

**Federal Cases**

4

*Alvarez v. Autozone, Inc.*
   No. 14-cv-02471, 2015 U.S. Dist. LEXIS 48447 (C.D. Cal. Apr. 13, 2015) ......................... 14

5

*AT&T Mobility LLC v. Concepcion*
   131 S. Ct. 1740 (2011) ..................................................................... 8, 9, 12, 13, 15

6

7

*AT&T Techs., Inc. v. Commc'ns Workers of Am.*
   475 U.S. 643 (1986) ........................................................................ 1, 6, 10, 15

8

*Carnival Cruise Lines, Inc. v. Shute*
   499 U.S. 585 (1991) ......................................................................................... 6

9

10

*Chico v. Hilton Worldwide, Inc.*
   No. 14-cv-5750, 2014 U.S. Dist. LEXIS 147752 (C.D. Cal. Oct. 7, 2014)............................ 13

11

*Chiron Corp. v. Ortho Diagnostic Sys., Inc.*
   207 F.3d 1126 (9th Cir. 2000) .............................................................................. 5

12

13

*Circuit City Stores, Inc. v. Adams*
   279 F.3d 889 (9th Cir. 2002) ............................................................................... 6

14

*Coneff v. AT&T Corp.*
   673 F.3d 1155 (9th Cir. 2012) ......................................................................... 12, 13

15

16

*Dean Witter Reynolds Inc. v. Byrd*
   470 U.S. 213 (1985) ...................................................................................... 5, 12

17

*Doctor's Assocs., Inc. v. Casarotto*
   517 U.S. 681 (1996) ......................................................................................... 6

18

19

*Estrada v. Cleannet United States*
   No. 14-cv-1785, 2015 U.S. Dist. LEXIS 22403 (N.D. Cal. Feb. 24, 2015) ............... 13, 14, 15

20

*Fardig v. Hobby Lobby Stores, Inc.*
   No. 14-cv-561, 2014 U.S. Dist. LEXIS 139359 (C.D. Cal. Aug. 11, 2014) .............. 13, 14, 15

21

22

*Gilmer v. Interstate/Johnson Lane Corp.*
   500 U.S. 20 (1991) ........................................................................................ 5, 8

23

*Glaude v. Macy's Inc.*
   No. 12-5179-PSG, 2012 U.S. Dist. LEXIS 171418 (N.D. Cal. Dec. 3, 2012) ........................ 15

24

*Grabowski v. C.H. Robinson Co.*
   817 F. Supp. 2d 1159 (S.D. Cal. 2011).................................................................... 14

25

26

*Green Tree Fin. Corp. v. Randolph*
   531 U.S. 79 (2000) ........................................................................................... 9

27

*Gvozdenovic v. United Air Lines, Inc.*
   933 F.2d 1100 (2d Cir. 1991)............................................................................... 7

28

*Hernandez v. DMSI Staffing, LLC*
  No. 14-cv-1531, 2015 U.S. Dist. LEXIS 12824 (N.D. Cal. Feb. 3, 2015) .............................. 14

*James v. McDonald's Corp.*
  417 F.3d 672 (7th Cir. 2005) ................................................................................................. 7

*Kairy v. Supershuttle Int'l*
  2012 U.S. Dist. LEXIS 134945 (N.D. Cal. Sept. 20, 2012) ..................................................... 9

*Knutson v. Sirius XM Radio Inc.*
  771 F.3d 559 (9th Cir. 2014) ................................................................................................. 6

*Langston v. 20/20*
  No. 14-cv-1360, 2014 U.S. Dist. LEXIS 151477 (C.D. Cal. Oct. 17, 2014)........................... 13

*Lewis v. UBS Fin. Servs.*
  818 F. Supp. 2d 1161 (N.D. Cal. 2011) ............................................................................... 15

*Lucero v. Sears Holdings Mgmt. Corp.*
  No. 14-cv-1620, 2014 U.S. Dist. LEXIS 168782 (S.D. Cal. Dec. 2, 2014) ........................... 13

*Macias v. Excel Bldg. Servs. LLC*
  767 F. Supp. 2d 1002 (N.D. Cal. 2011) ................................................................................. 6

*Marmet Health Care Ctr., Inc. v. Brown*
  132 S. Ct. 1201 (2012) .................................................................................................. 12, 13

*Martinez v. Leslie's Poolmart, Inc.*
  No. 14-cv-1481, 2014 U.S. Dist. LEXIS 156218 (C.D. Cal. Nov. 3, 2014) ........................... 14

*Miguel v. JPMorgan Chase Bank, N.A.*
  No. 12-cv-3308, 2013 U.S. Dist. LEXIS 16865 (C.D. Cal. Feb. 5, 2013) .............................. 14

*Mill v. Kmart Corp.*
  No. 14-cv-2749, 2014 U.S. Dist. LEXIS 165666 (N.D. Cal. Nov. 26, 2014) ......................... 13

*Morvant v. P.F. Chang's China Bistro, Inc.*
  870 F. Supp. 2d 831 (N.D. Cal. 2012) ................................................................................. 14

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*
  460 U.S. 1 (1983)................................................................................................................. 8

*Nghiem v. NEC Elec., Inc.*
  25 F.3d 1437 (9th Cir. 1994) ............................................................................................ 6, 8

*Ortiz v. Hobby Lobby Stores, Inc.*
  No. 13-cv-1619, 2014 U.S. Dist. LEXIS 140552 (E.D. Cal. Oct. 1, 2014)............................ 13

*Ostroff v. Alterra Healthcare Corp.*
  433 F. Supp. 2d 538 (E.D. Pa. 2006) ................................................................................... 6

*Quevedo v. Macy's, Inc.*
  798 F. Supp. 2d 1122 (C.D. Cal. 2011) ............................................................................... 14

*Shearson/Am. Express, Inc. v. McMahon*
  482 U.S. 220 (1987)......................................................................................................... 5, 8

*Sierra v. Oakley Sales Corp.*
   No. 13-55891 (9th Cir.) ................................................................................. 13

*Sims v. Clarendon Nat'l Ins. Co.*
   336 F. Supp. 2d 1311 (S.D. Fla. 2004) ......................................................... 8

*Simula, Inc. v. Autoliv, Inc.*
   175 F.3d 716 (9th Cir. 1999) ....................................................................... 10

*Sparling v. Hoffman Constr. Co.*
   864 F.2d 635 (9th Cir. 1988) ....................................................................... 15

*Upstate Shredding, LLC v. Carloss Well Supply Co.*
   84 F. Supp. 2d 357 (N.D.N.Y. 2000) ............................................................. 8

*Volt Info. Sci., Inc. v. Bd. of Trs. Of Leland Stanford Junior Univ.*
   489 U.S. 468 (1989) ........................................................................................ 5

*Zenelaj v. Handybook Inc.*
   No. 14-cv-05449, 2015 U.S. Dist. LEXIS 26068 (N.D. Cal. Mar. 3, 2015) ........... 14

**State Cases**

*Ajamian v. CantorCO2e, L.P.*
   203 Cal. App. 4th 771 (2012) ....................................................................... 9

*Armendariz v. Found. Health Psychcare Servs., Inc.*
   24 Cal. 4th 83 (2000) .................................................................................... 9

*Asmus v. Pacific Bell*
   23 Cal. 4th 1 (2000) ...................................................................................... 8

*Binder v. Aetna Life Ins. Co.*
   75 Cal. App. 4th 832 (1999) ......................................................................... 6

*Craig v. Brown & Root*
   84 Cal. App. 4th 416 (2000) ......................................................................... 8

*Dotson v. Amgen, Inc.*
   181 Cal. App. 4th 975 (2010) ..................................................................... 11

*Iskanian v. CLS Transportation*
   59 Cal. 4th 348 (2014) ............................................................. 11, 12, 13, 14

*Securitas Sec. Servs. USA, Inc. v. Super. Ct.*
   234 Cal. App. 4th 1109 (2015) ................................................................... 11

*Windsor Mills, Inc. v. Collins & Aikman Corp.*
   25 Cal. App. 3d 987 (1972) ........................................................................... 6

**Federal Statutes**

9 U.S.C. § 2 .................................................................................... 5, 6, 9, 12

9 U.S.C. § 4 ...................................................................................................... 5

CAVIAR'S MOTION TO COMPEL INDIVIDUAL ARBITRATION AND MOTION TO DISMISS
Case No. 3:15-cv-01285-EDL

**State Statutes**

Cal. Lab. Code § 226(a). ........................................................................................ 11

Cal. Lab. Code § 2802 ........................................................................................... 11

**Federal Rules**

Fed. R. Civ. P. 12(b)(1)..................................................................................... 2, 5, 15

CAVIAR'S MOTION TO COMPEL INDIVIDUAL ARBITRATION AND MOTION TO DISMISS
Case No. 3:15-cv-01285-EDL

943265

**TO ALL PARTIES AND TO THEIR COUNSEL OF RECORD:**

PLEASE TAKE NOTICE that on August 4, 2015 at 9:00 a.m., or as soon thereafter as this matter may be heard, in the courtroom of the Honorable Elizabeth D. Laporte, located in Courtroom E, 15th Floor of the United States Courthouse, 450 Golden Gate Avenue, San Francisco, CA 94102, Defendant Caviar, Inc. d/b/a Try Caviar ("Caviar") will and hereby does move this Court to compel individual arbitration of plaintiff's claims and to dismiss plaintiff's claims with prejudice.

Caviar submits this Motion under the Federal Arbitration Act, 9 U.S.C. §§ 1–16 ("FAA") and Federal Rule of Civil Procedure 12(b)(1) based on plaintiff's agreement to individual arbitration with Caviar when agreeing to the Courier Terms and Conditions.  This Motion is based on this Notice of Motion, the following Memorandum of Points and Authorities, the accompanying Declarations of Brenda Velasquez and Jesse Reiss and the exhibits attached thereto, the pleadings and other documents on file in this case, all other matters of which the Court may take judicial notice, and any further argument or evidence that may be received by the Court at the hearing.

Dated:  June 30, 2015                                   Respectfully submitted,

                                                        KEKER & VAN NEST LLP


                                        By:   */s/ Ashok Ramani*
                                              ASHOK RAMANI
                                              R. JAMES SLAUGHTER
                                              SIMONA A. AGNOLUCCI
                                              ERIN E. MEYER

                                              Attorneys for Defendant
                                              CAVIAR, INC. d/b/a TRY CAVIAR

CAVIAR'S MOTION TO COMPEL INDIVIDUAL ARBITRATION AND MOTION TO DISMISS
Case No. 3:15-cv-01285-EDL
943265

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.     INTRODUCTION

Plaintiff Jeffry Levin ("Levin") is an independent-contractor courier for Caviar, a San Francisco-based technology company that partners directly with America's best independent restaurants to bring great food to customers across the country.  Caviar uses a web platform (the "Caviar Platform") to facilitate connections between customers, food delivery professionals ("couriers") such as Levin, and independent restaurants that generally do not offer their own delivery services.

To become a courier for Caviar, Levin agreed to the Courier Terms and Conditions, which govern the relationship between Caviar and its couriers.  Levin acknowledges as much by himself relying on the Courier Terms and Conditions in his Amended Complaint, describing it as a "contract that couriers enter into with Try Caviar."  Am. Compl. ¶ 15.  By agreeing to be bound by this contract, Levin expressly agreed to submit "*any* disputes . . . arising from Courier's agreement, services, or other relationships with Caviar" to "final and binding arbitration." Declaration of Brenda Velasquez ("Velasquez Decl."), Ex. C (emphasis added).  Levin and Caviar also agreed that "neither will bring any action on behalf of any party other than themselves, and specifically will *bring no collective or class action* against each other."  *Id.* (emphasis added).

Despite having made these explicit agreements, Levin chose to pursue his claims, and the claims of a nationwide putative class of other allegedly aggrieved couriers, in federal court, contrary to the arbitration clause to which the parties agreed.  There can be no serious dispute that Levin's claims arise from his "agreement, services, or other relationships" with Caviar.  The agreement language is unambiguous that such claims must be arbitrated.  The strong, liberal federal policy favoring arbitration, which provides that arbitration agreements must be enforced unless it is clear that they are not susceptible of an interpretation that covers the asserted dispute, makes this so.  *See, e.g.*, *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986).

Because Levin has no basis for pursuing any of his claims in this Court, the Court should

compel him to individually arbitrate all causes of action against Caviar.  And because all of Levin's claims are subject to a binding arbitration agreement, this Court lacks subject-matter jurisdiction over this action and should dismiss it under Federal Rule of Civil Procedure 12(b)(1).

## II.      FACTUAL AND PROCEDURAL BACKGROUND

The Caviar Platform connects customers seeking food delivery to independent restaurants that generally do not otherwise offer delivery services.  Velasquez Decl. ¶ 2.  Customers can order restaurant meals on the web or through an application on their smartphones.  *Id.*  Couriers accept and fulfill these delivery requests through use of the Caviar Platform.

### A.      Couriers are required to agree to the Courier Terms and Conditions—which includes an unambiguous arbitration clause—prior to accepting their first delivery.

Caviar requires potential couriers to review and accept the Courier Terms and Conditions agreement when applying to accept deliveries through the Caviar Platform.  The agreement explains, in the preamble of the document, that "[e]ach and every time the Courier provides the Delivery Services, Courier will be deemed to acknowledge that it has read, understood and accepted these terms and conditions."  The preamble also provides, in all-caps, that "IF YOU DO NOT AGREE TO THE TERMS AND CONDITIONS OF THIS AGREEMENT . . . YOU CANNOT BE A COURIER FOR CAVIAR."  Velasquez Decl., Ex. C at 1.

The Courier Terms and Conditions also include an unambiguous, plain English arbitration clause that appears in larger font than the text that precedes and follows it:

> Courier and Caviar agree that any disputes between them arising from Courier's agreement, services, or other relationships with Caviar *shall be subject to final and binding arbitration before the American Arbitration Association* ("AAA"). Such arbitration shall be conducted before a single, neutral arbitrator, pursuant to the applicable AAA rules but provide for discovery and remedies which would otherwise be available under applicable state or federal law. Such arbitration shall be conducted within the court jurisdiction within which the Courier primarily provides services to Caviar. Caviar shall pay for any arbitration fees, except that Courier shall pay that portion of the arbitration filing fee which is equal to or less than the amount charged by applicable state court for filing a civil complaint. Each party shall pay their own attorneys' fees incurred in the arbitration, except as provided by applicable state or federal law. Courier and Caviar agree that neither will bring any action on behalf of any party other than themselves, and *specifically will bring no collective or class action against each other*. This clause expressly precludes Courier and Caviar from bringing a civil court action against the other

party on behalf of themselves or any other person or entity, except where immediate injunctive relief is necessary to protect property or safety.

Velasquez Decl., Ex. C ¶ 15.5 (emphases added).

### B. Levin accepted the Courier Terms and Conditions prior to making deliveries using the Caviar mobile application.

Levin is a courier with Caviar in the San Francisco Bay Area. He signed up to become a courier in early December 2014. Velasquez Decl. ¶ 8. At that time, the general application process for San Francisco-based couriers comprised, among other things, a group orientation with a Caviar Logistics Associate called an onboarding session. *Id.* ¶ 3. During the group onboarding session, a Caviar Logistics Associate provided an overview of the relationship between couriers and Caviar, along with a detailed explanation as to why Caviar viewed couriers as independent contractors, the benefits to both parties from proceeding as independent contractors, and a description of the Courier Terms and Conditions agreement. *Id.* ¶ 7. Levin attended a group onboarding session on December 15, 2014. *Id.* ¶ 8.

On December 16, 2014, a Caviar Logistics Associate sent Levin an email explaining: "As noted in our on boarding session, I need you to please complete our Caviar On Boarding Form, which takes only a few minutes and contains your copy of the '**Courier Terms and Agreement**' we reviewed during training." *Id.*, Ex. D (emphasis in original). This email included a link to a web-based onboarding form. The onboarding form contained a hyperlink to the Caviar Courier Terms and Conditions that had been reviewed with Levin and other applicants during onboarding, and it required Levin to check a box prior to submitting the form "signify[ing] that [he had] reviewed, underst[ood] and agree[d] to the Courier Terms and Conditions." *Id.* ¶¶ 5–6, Exs. A, B.

Levin accepted his first delivery through the Caviar Platform on December 16, 2014, and has continued to perform deliveries periodically since that time. Velasquez Decl. ¶ 10.

The Courier Terms and Conditions make plain that, by providing Delivery Services through the Caviar Platform, couriers are "deemed to acknowledge that [they have] read, understood and accepted" the agreement. Velasquez Decl., Ex. C at 1. Levin acknowledges that he accepted the Courier Terms and Conditions, which requires application of California law to

disputes arising out of the Courier Terms and Conditions.  *See* Am. Compl. ¶ 15 ("Pursuant to a contract that couriers enter into with Try Caviar, California law applies to claims brought by couriers against the company.").

### C.  Just a few months later, Levin reaffirmed his acceptance of the Courier Terms and Conditions.

Like any technology company, Caviar periodically and regularly updates its applications. On March 26, 2015, Caviar updated its courier iOS application, which permits couriers to connect to the Caviar Platform, to version 1.15.  Declaration of Jesse Reiss ("Reiss Decl.") ¶¶ 3–4.  On April 2, 2015, Levin downloaded version 1.15 of Caviar's courier iOS application on his iPhone. *Id*. ¶¶ 9–12.  When couriers log into version 1.15 of the application, they are shown a screen that declares "You're Currently Not Available."  *Id.* ¶ 6.  On the same screen, the application displays the following text: "Caviar operators cannot see you and assign orders.  By marking yourself available, you agree to <u>Caviar's Courier terms of service</u>."  *Id.*  The arbitration provision in the Courier Terms and Conditions was not changed between December 2014 and April 2015.  *Id.* ¶ 8. The words "<u>Caviar's Courier terms of service</u>" are hyperlinked to a webpage that displays the Courier Terms and Conditions.  *Id.* ¶ 7.  Below is a screenshot of this screen with the hyperlink as it was presented to Levin on his iPhone.



Reiss Decl. ¶ 6.  At the bottom of the screen, just below the link to the Courier Terms and Conditions, there is a button that can be clicked to "Become Available."  *Id.* ¶¶ 6–7.

Levin downloaded iOS version 1.15 of the courier application at 12:30 PDT on April 2, 2015, and marked himself available by clicking the "Become Available" button at 12:32 PDT, thereby explicitly re-agreeing to the Courier Terms and Conditions.  *Id.* ¶¶ 9–12.

## III.    ARGUMENT

The Federal Arbitration Act provides that a written contractual provision to arbitrate "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The Supreme Court has repeatedly announced that the FAA creates a strong, liberal federal policy that requires arbitration. *See, e.g.*, *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 25 (1991); *Volt Info. Sci., Inc. v. Bd. of Trs. Of Leland Stanford Junior Univ.*, 489 U.S. 468, 475–76 (1989); *Shearson/Am. Express, Inc. v. McMahon*, 482 U.S. 220, 226 (1987).

Based on the FAA and long-standing case law, this Court's role in deciding Caviar's motion to compel arbitration is a narrow one. "[T]he [Federal Arbitration] Act 'leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed.'" *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000) (quoting *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 218 (1985)). "The court's role under the Act is therefore limited to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue. If the response is affirmative on both counts, then *the Act requires the court to enforce the arbitration agreement* in accordance with its terms." *Id.* (citations omitted) (emphasis added).

Because a valid arbitration agreement exists between Levin and Caviar, and the agreement encompasses the disputes set forth in the Amended Complaint, this Court should order Levin to submit his disputes with Caviar to individual arbitration as required under the Courier Terms and Conditions. *See* 9 U.S.C. § 4. And because all of Levin's claims are subject to a binding arbitration agreement, this Court should dismiss these claims for lack of subject-matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1).

### A.    This Court should compel individual arbitration of Levin's claims.

#### 1.    Levin and Caviar consented to final and binding arbitration by agreeing to the Courier Terms and Conditions.

The first question for this Court is whether a valid arbitration agreement exists between the parties. The answer is yes.

1    "[A]rbitration is a matter of contract," *AT&T Techs., Inc.*, 475 U.S. at 648 (citations

2    omitted), and state contract law controls whether the parties have agreed to arbitrate.  *Circuit City*

3    *Stores, Inc. v. Adams*, 279 F.3d 889, 892 (9th Cir. 2002) (noting that although the FAA preempts

4    state laws that are only applicable to arbitration agreements, general contract principles and

5    defenses "grounded in state contract law, may operate to invalidate arbitration agreements")

6    (citing *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996)).  An arbitration agreement

7    need only be in writing, and *no signature by either party is necessary* to create a binding

8    arbitration agreement.  *See* FAA, 9 U.S.C. § 2; *Nghiem v. NEC Elec., Inc.*, 25 F.3d 1437, 1439

9    (9th Cir. 1994) ("While the FAA requires a writing, it does not require that the writing be signed

10    by the parties.") (citation omitted).

11    Under California law, mutual assent is a required element of contract formation, and

12    "[m]utual assent may be manifested by written or spoken words, or by conduct."  *Binder v. Aetna*

13    *Life Ins. Co.*, 75 Cal. App. 4th 832, 850 (1999).  Acceptance of contract terms may be implied

14    through action or inaction.  *See Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 593–95

15    (1991).  Thus, "an offeree, knowing that an offer has been made to him . . . . may be held to have

16    accepted, by his conduct, whatever terms the offer contains."  *Knutson v. Sirius XM Radio Inc.*,

17    771 F.3d 559, 565 (9th Cir. 2014) (citing *Windsor Mills, Inc. v. Collins & Aikman Corp.*, 25 Cal.

18    App. 3d 987, 991 (1972)).

19    Here, Caviar has presented evidence[1] that (1) a Caviar Courier Logistics Associate

20    described the Courier Terms and Conditions to Levin during a group onboarding session; and (2)

21    a Courier Logistics Associate sent Levin an email asking him to "complete our Caviar On

22    Boarding Form, which takes only a few minutes and contains your copy of the '**Courier Terms**

23    **and Agreement**' we reviewed during training."  Velasquez Decl. ¶ 9, Ex. D (emphasis in

24    original).  The Courier Terms and Conditions do not require a signature to be valid and

25    enforceable, because "[e]ach and every time the Courier provides the Delivery Services, courier

---

[1] "While the Court may not review the merits of the underlying case '[i]n deciding a motion to compel arbitration, [it] may consider the pleadings, documents of uncontested validity, and affidavits submitted by either party.'"  *Macias v. Excel Bldg. Servs. LLC*, 767 F. Supp. 2d 1002, 1007 (N.D. Cal. 2011) (quoting *Ostroff v. Alterra Healthcare Corp.*, 433 F. Supp. 2d 538, 540 (E.D. Pa. 2006)) (alterations in original).

will be deemed to acknowledge that it has read, understood and accepted these terms and conditions." Velasquez Decl., Ex. C. There is no dispute that Levin provided Delivery Services as defined in the Courier Terms and Conditions and after participating in the group onboarding session and receiving the above-described email. *See, e.g.*, Am. Compl. ¶ 3. By so doing, Levin expressly and repeatedly assented to the Courier Terms and Conditions and is bound by the arbitration clause therein.

Levin's subsequent conduct also manifests a "clear intent" to be bound by the Courier Terms and Conditions, for several reasons. *See Gvozdenovic v. United Air Lines, Inc.*, 933 F.2d 1100, 1105 (2d Cir. 1991) (holding that "an agreement [to arbitrate] may be implied from the party's conduct" where such conduct "manifested a clear intent" to assent to the agreement). *First*, on April 2, 2015 and repeatedly thereafter, Levin reaffirmed his acceptance of the Caviar Terms and Conditions. He downloaded iOS version 1.15 of the Caviar courier application, which displayed a screen stating "You're Currently Not Available." On the same screen, the application displayed the following text: "Caviar operators cannot see you and assign orders. By marking yourself available, you agree to <u>Caviar's Courier terms of service</u>," along with a link to the Courier Terms and Conditions. On numerous occasions, Levin clicked the "Become Available" button prior to accepting delivery requests. Each time he did so, Levin reaffirmed his acceptance of the arbitration provision, which was unchanged between December 2014 and April 2015. Reiss Decl. ¶ 8; Velasquez Decl. ¶¶ 6, 9.[2]

*Second*, Levin's reliance on the Courier Terms and Conditions in the Amended Complaint is further evidence that he agreed to *all* the terms of that agreement, including the arbitration provision. In his Amended Complaint, Levin expressly relies on the "contract that couriers enter into with Try Caviar," as he must, to style his nationwide class action *under California law*. Am. Compl. ¶ 15. By seeking to enforce the California choice-of-law provision in the Courier Terms and Conditions, Levin acknowledges that he is and must be bound by that same contract. *See, e.g., James v. McDonald's Corp.*, 417 F.3d 672, 678 (7th Cir. 2005) ("Moreover, Ms. James

---

[2] The Caviar Terms and Conditions have remained unchanged since October 2014, two months prior to Levin's onboarding and first delivery. Velasquez Decl. ¶ 6.

CAVIAR'S MOTION TO COMPEL INDIVIDUAL ARBITRATION AND MOTION TO DISMISS
Case No. 3:15-cv-01285-EDL

943265

cannot claim, on the one hand, that a valid contract obligates McDonald's to redeem her prize and, on the other hand, argue that no contract binds her to the contest rules. A contest participant cannot pick and choose among the terms and conditions of the contest; the rules stand or fall in their entirety."); *Sims v. Clarendon Nat'l Ins. Co.*, 336 F. Supp. 2d 1311, 1325 (S.D. Fla. 2004) (holding that it "would be inequitable to allow [a party] to pick and choose which provisions" of a contract "should be enforced and which should not be enforced"); *Upstate Shredding, LLC v. Carloss Well Supply Co.*, 84 F. Supp. 2d 357, 363 (N.D.N.Y. 2000) ("Plaintiffs seek to have their cake and eat it too; they claim reliance on the Express Warranty to establish a claim for breach of the express warranty and, at the same time, disclaim reliance on that same warranty to avoid arbitration.").

Though not necessary given the facts here, Levin's consent to the arbitration clause in the Courier Terms and Conditions is, in any case, implied by his continued provision of Delivery Services through the Caviar Platform. *See Craig v. Brown & Root*, 84 Cal. App. 4th 416, 420–21 (2000) (holding that "a party's acceptance of an agreement to arbitrate may be . . . implied-in-fact" where continued provision of services constitutes "acceptance of an agreement") (citing *Asmus v. Pacific Bell*, 23 Cal. 4th 1, 11 (2000)). Arbitration agreements can be enforced even in the absence of a signed arbitration agreement. *See Nghiem*, 25 F.3d at 1439 ("While the FAA requires a writing, it does not require that the writing be signed by the parties.") (citation omitted).

For these reasons, there can be no dispute that the parties entered into a valid contract, and that contract explicitly requires arbitration of the pending claims.

## 2. The Courier Terms and Conditions are presumed valid and enforceable under the FAA.

Arbitration agreements governed by the FAA are presumed valid and enforceable. *See Shearson/Am. Express, Inc. v. McMahon*, 482 U.S. 220, 226–27 (1987). This reflects Congress's intent behind the FAA: to reverse longstanding judicial hostility toward arbitration, and evince a "liberal federal policy favoring arbitration agreements." *See Gilmer*, 500 U.S. at 25; *see also Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983). The presumption of validity also reflects the "fundamental principle that arbitration is a matter of contract." *AT&T*

8

*Mobility LLC v. Concepcion*, 131 S. Ct. 1740, 1745 (2011) (citations omitted).  The FAA

therefore mandates enforcement of an arbitration clause unless grounds exist "at law or in equity

for the revocation of any contract."  9 U.S.C. § 2.

Likewise, the Supreme Court has held that class-action waivers, like the one present in the

Courier Terms and Conditions, are enforceable under the FAA.  In *Concepcion*, the Court

considered California's judge-made rule classifying "most collective-arbitration waivers in

consumer contracts as unconscionable," and held that the FAA preempted the California rule.

131 S. Ct. at 1746, 1753.  The Court reasoned that "[r]equiring the availability of classwide

arbitration interferes with the fundamental attributes of arbitration and thus creates a scheme

inconsistent with the FAA."  *Id.* at 1748.

In any event, if Levin contended that the Courier Terms and Conditions and the arbitration

terms therein were invalid and unenforceable, it would be his burden—not Caviar's—to prove

that the causes of action in this dispute are unsuitable for arbitration.  *See Green Tree Fin. Corp.*

*v. Randolph*, 531 U.S. 79, 91–92 (2000).  Because it is not Caviar's burden to prove

enforceability of the Courier Terms and Conditions, Caviar will address any such arguments, if

necessary, on reply.[3]

### 3.  All causes of action asserted in the Amended Complaint fall within the scope of the arbitration provision in the Courier Terms and Conditions.

The Court should compel individual arbitration of all of Levin's causes of action.  Levin

and Caviar agreed that "any disputes between them arising from [Levin]'s agreement, services, or

other relationships with Caviar *shall be subject to final and binding arbitration*."  Velasquez

---

[3] To the extent Levin were to argue that the Courier Terms and Conditions are unenforceable because they are unconscionable, such an argument would lack merit.  Invalidating an arbitration agreement under California law requires a two-part showing: the party opposing arbitration has the burden of proving that the arbitration provision is both procedurally and substantively unconscionable.  *Kairy v. Supershuttle Int'l*, 2012 U.S. Dist. LEXIS 134945, at *19 (N.D. Cal. Sept. 20, 2012) (citing *Ajamian v. CantorCO2e, L.P.*, 203 Cal. App. 4th 771, 795 (2012)).  Levin will not be able to satisfy these requirements.  To take but one reason why, California law requires only a "modicum of bilaterality" to overcome a claim of substantive unconscionability.  *Armendariz v. Found. Health Psychcare Servs., Inc.*, 24 Cal. 4th 83, 117 (2000).  In this case, the arbitration agreement does not contain any one-sided terms that disadvantage Levin.  To the contrary, the arbitration agreement provides that Caviar will pay for all arbitration fees (except for the portion of arbitration filing fees that do not exceed the amount charged for filing a civil complaint in state court).  Velasquez Decl., Ex. C ¶ 15.5.

Decl., Ex. C ¶ 15.5 (emphasis added).

Here, Levin asserts claims under the California Labor Code, the California Unfair Competition Law, and the California Private Attorney Generals Act ("PAGA").  Am. Compl. ¶¶ 37–42.  The gravamen of his complaint is that Caviar misclassified Levin and other couriers as independent contractors instead of employees.  For example, Levin claims that "[a]lthough classified as independent contractors, Try Caviar couriers are employees" because "[t]hey are required to follow detailed requirements imposed on them by Try Caviar (including requirements regarding the accurateness of their deliveries, how they interact with customers, etc.) and they are subject to termination based on their failure to adhere to these requirements or in the discretion of Try Caviar."  *Id.* ¶ 12.  Additionally, Levin alleges that "based on their misclassification as independent contractors, Try Caviar has required couriers to bear many of the expenses of their employment, including expenses for their vehicle, gas, and other expenses."  *Id.* ¶ 14.

The Courier Terms and Conditions, however, explain that the "Courier's relationship with Caviar will be that of an independent contractor and not that of an employee."  By agreeing to the Courier Terms and Conditions, the "Courier acknowledges and agrees that Courier shall not be eligible for any Caviar employee benefits."  Velasquez Decl., Ex. C ¶ 14.1.  As noted above, the arbitration provision covers disputes that arise from Levin's "relationships with Caviar."  *Id.*  In alleging that he formed an employer-employee relationship with Caviar but was misclassified as an independent contractor, Levin is plainly disputing the terms of his agreement and relationship with Caviar.

Levin's factual allegations regarding his relationship with Caviar—which Caviar of course disputes—underlie all causes of action in the Amended Complaint.  Thus, the causes of action arise from the Courier Terms and Conditions and also from the relationship between the parties.  Levin's claims are therefore subject to binding arbitration under the Courier Terms and Conditions.  *See Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 721 (9th Cir. 1999) ("To require arbitration, [plaintiff's] *factual allegations need only touch matters covered by the contract containing the arbitration clause and *all doubts are to be resolved in favor of arbitrability*.") (emphases added); *see also AT&T Techs.*, 475 U.S. at 650 (holding that no court may deny

943265

arbitration "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute").

The Court should compel individual arbitration of all of Levin's claims that arise from the dispute over whether Levin could have been properly classified as an independent contractor.

**4.     Any argument by Levin that adding a PAGA claim takes this case out of arbitration lacks merit.**

**a.     Levin may argue that California state law prohibits individual arbitration of his PAGA claim.**

As described above, all of Levin's claims fall within the scope of the arbitration provision in the Courier Terms and Conditions, including Levin's PAGA claim, and are therefore subject to individual arbitration.[4]  Because Levin agreed that he would not "bring any action on behalf of any party other than" himself and that he "specifically [would] bring no collective or class action" against Caviar, he cannot maintain a representative PAGA claim.  Caviar anticipates that Levin may oppose this motion by arguing that the waiver of the right to bring class and/or representative actions in the Courier Terms and Conditions is unenforceable under *Iskanian v. CLS Transportation*, 59 Cal. 4th 348 (2014).  In making that argument, Levin may claim (1) that the waiver of the right to bring representative PAGA claims renders the entire agreement substantively unconscionable and therefore unenforceable;[5] or (2) that the PAGA claim is not subject to arbitration under *Iskanian* and should proceed in this Court even if the rest of the claims are sent to individual arbitration.

---

[4] Levin asserts a PAGA claim on behalf of himself and all other current and former aggrieved couriers in California for alleged violations of California Labor Code sections 2802 and 226(a). Am. Compl. ¶¶ 36, 40.

[5] Even if the Court were to find (and it should not) that the waiver of representative PAGA claims is unenforceable, the remainder of the arbitration agreement and class-action waiver would be unaffected.  The Courier Terms and Conditions contains the following severability clause: "Each provision of this Agreement shall be construed separately and notwithstanding that the whole or any part of any such provision may prove to be illegal or unenforceable the other provisions of this Agreement and the remainder of the provision in question shall continue in full force and effect."  *See* Velasquez Decl., Ex. C ¶ 15.8.  "Where, as here, only one provision of an agreement is found to be unconscionable and that provision can easily be severed without affecting the remainder of the agreement, the proper course is to do so."  *Dotson v. Amgen, Inc.*, 181 Cal. App. 4th 975, 985 (2010); *see also Securitas Sec. Servs. USA, Inc. v. Super. Ct.*, 234 Cal. App. 4th 1109, 1125–26 (2015) ("Likewise, [w]hether a contract is entire or separable depends upon its language and subject matter, and this question is one of construction to be determined by the court *according to the intention of the parties*.").

Both arguments fail. While the answer might differ in California state court, *see, e.g.,* *Iskanian*, 59 Cal. 4th at 384 (holding that PAGA waivers are unenforceable in actions brought in California state court), Supreme Court precedent makes plain that *state rules that conflict with the FAA's mandate are preempted. See, e.g.,* *Concepcion*, 131 S. Ct. at 1747. Accordingly, basic principles of federalism require that this Court compel Levin to individually arbitrate his PAGA claim.

### b. Under well-settled federal law, state law conflicting with the FAA's mandate is preempted.

United States Supreme Court precedent—and federal district-court cases interpreting that precedent in light of *Iskanian*—demonstrate that, while the California Supreme Court's interpretation of PAGA is controlling, its interpretation of the FAA is not.

*Concepcion* holds that the FAA prohibits states from "conditioning the enforceability of certain arbitration agreements" on the availability of arbitration procedures that "sacrifice[] the principal advantage of arbitration—its informality—and make[] the process slower, more costly, and more likely to generate procedural morass than final judgment." *Concepcion*, 131 S. Ct. at 1744, 1751. As the Ninth Circuit has noted, in *Concepcion* the Supreme Court "observed that *individualized proceedings* are an inherent and necessary element of arbitration." *Coneff v. AT&T Corp.*, 673 F.3d 1155, 1158 (9th Cir. 2012) (citing *Concepcion*, 131 S. Ct. at 1750–52) (emphasis added).

*Iskanian*'s rule—that the enforceability of arbitration agreements is conditioned on the availability of representative actions and their accompanying procedures—conflicts with the Supreme Court's interpretation of the FAA. The FAA provides that a "written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The statute's text includes no exception for PAGA-type claims. Instead, it "requires courts to enforce the bargain of the parties to arbitrate." *Marmet Health Care Ctr., Inc. v. Brown*, 132 S. Ct. 1201, 1203 (2012) (quoting *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 217 (1985)). As the Supreme Court explained, "[s]tates cannot require a procedure that is

12

inconsistent with the FAA, even if it is desirable for unrelated reasons." *Concepcion*, 131 S. Ct. at 1753. "When state law prohibits outright the arbitration of a particular type of claim, the analysis is straightforward: The conflicting rule is displaced by the FAA." *Marmet*, 132 S. Ct. at 1203 (citing *Concepcion* and holding that the FAA preempted a state law that certain types claims could not be arbitrated as a matter of public policy).

Thus, any potential argument by Levin that enforcing his contractually-agreed arbitration provision frustrates the objectives of PAGA or undermines public policy should be rejected, just as it was in *Concepcion* and *Coneff*. *Concepcion*, 131 S. Ct. at 1753; *see also Coneff*, 673 F.3d at 1158–59 ("[P]olicy concerns, however worthwhile, cannot undermine the FAA."); *Langston v. 20/20*, No. 14-cv-1360, 2014 U.S. Dist. LEXIS 151477, at *20 (C.D. Cal. Oct. 17, 2014) (declining to follow *Iskanian* and holding that the FAA preempts California's rule prohibiting representative PAGA waivers because that rule treats arbitration agreements disfavorably).

### c.   A wide majority of federal courts in California reject *Iskanian* and order PAGA claims to arbitration.

The great weight of authority from federal district courts in California rejects *Iskanian* and holds that PAGA waivers are enforceable under the FAA.[6] *See Estrada v. Cleannet United States*, No. 14-cv-1785, 2015 U.S. Dist. LEXIS 22403, at *12–13 (N.D. Cal. Feb. 24, 2015); *Lucero v. Sears Holdings Mgmt. Corp.*, No. 14-cv-1620, 2014 U.S. Dist. LEXIS 168782, at *10–14 (S.D. Cal. Dec. 2, 2014); *Mill v. Kmart Corp.*, No. 14-cv-2749, 2014 U.S. Dist. LEXIS 165666, at *17–18 (N.D. Cal. Nov. 26, 2014); *Langston v. 20/20 Co.*, No. 14-cv-1360, 2014 U.S. Dist. LEXIS 151477, at *20 (C.D. Cal. Oct. 17, 2014); *Chico v. Hilton Worldwide, Inc.*, No. 14-cv-5750, 2014 U.S. Dist. LEXIS 147752, at *32–34 (C.D. Cal. Oct. 7, 2014); *Ortiz v. Hobby Lobby Stores, Inc.*, No. 13-cv-1619, 2014 U.S. Dist. LEXIS 140552, at *32–33 (E.D. Cal. Oct. 1, 2014); *Fardig v. Hobby Lobby Stores, Inc.*, No. 14-cv-561, 2014 U.S. Dist. LEXIS 139359, at

---

[6] This issue is currently pending before the Ninth Circuit in several consolidated cases for which the court heard oral argument on June 3, 2015. *See, e.g., Sierra v. Oakley Sales Corp.*, No. 13-55891 (9th Cir.).

*9–11 (C.D. Cal. Aug. 11, 2014).[7]

These cases are in line with district court opinions in the Ninth Circuit that were issued prior to *Iskanian*. *See, e.g.*, *Miguel v. JPMorgan Chase Bank, N.A.*, No. 12-cv-3308, 2013 U.S. Dist. LEXIS 16865, at *9 (C.D. Cal. Feb. 5, 2013); *Morvant v. P.F. Chang's China Bistro, Inc.*, 870 F. Supp. 2d 831, 845–46 (N.D. Cal. 2012); *Grabowski v. C.H. Robinson Co.*, 817 F. Supp. 2d 1159, 1180–81 (S.D. Cal. 2011); *Quevedo v. Macy's, Inc.*, 798 F. Supp. 2d 1122, 1140–42 (C.D. Cal. 2011).

*Estrada* is particularly instructive.  There, plaintiffs (who had entered into franchise agreements with defendants) entered into an arbitration agreement similar to the one in the Caviar Courier Terms and Conditions.  That agreement affirmed that the "Franchisee shall not seek to arbitrate or litigate as a representative of, or on behalf of, any other person or entity, any dispute, controversy, and claim of any kind arising out of or relating to this Agreement."  *Estrada*, 2015 U.S. Dist. LEXIS 22403, at *3.  Though plaintiffs argued that the arbitration agreement was unconscionable for other reasons, they conceded that if they were compelled to arbitrate, they could not pursue class-action claims.  Nonetheless, they argued that their PAGA claims should be permitted to proceed on a representative basis in light of *Iskanian*.  *Id.* at *11–12.

In rejecting plaintiffs' PAGA argument, the *Estrada* court explained that "[t]he California Supreme Court's holding in *Iskanian* notwithstanding, this Court is bound to examine for itself whether PAGA waivers are permissible."  *Id.* at *13.  The court first determined that "the provision prohibiting Plaintiffs from proceeding on a representative basis extends to representative PAGA claims" and "[t]o the extent the *Iskanian* holding would frustrate the FAA's goals, the Court finds that it is preempted."  *Id.* (citing *Fardig*, 2014 U.S. Dist. LEXIS 159359, at *4 ("Even in light of *Iskanian*, the Court continues to hold that the rule making PAGA claim waivers unenforceable is preempted by the FAA.")).  The court then concluded that the *Iskanian* rule *would* frustrate the FAA because "the United States Supreme Court has 'made clear that any

---

[7] *But see Alvarez v. Autozone, Inc.*, No. 14-cv-02471, 2015 U.S. Dist. LEXIS 48447 (C.D. Cal. Apr. 13, 2015); *Zenelaj v. Handybook Inc.*, No. 14-cv-05449, 2015 U.S. Dist. LEXIS 26068 (N.D. Cal. Mar. 3, 2015); *Hernandez v. DMSI Staffing, LLC*, No. 14-cv-1531, 2015 U.S. Dist. LEXIS 12824, at *17–27 (N.D. Cal. Feb. 3, 2015); *Martinez v. Leslie's Poolmart, Inc.*, No. 14-cv-1481, 2014 U.S. Dist. LEXIS 156218, at *14–16 (C.D. Cal. Nov. 3, 2014).

state-law rule standing as an obstacle to the accomplishment of the FAA's objectives of enforcing arbitration agreements according to their terms to allow for efficient procedures tailored to the specific dispute was preempted.'"  *Id.* at *12 (quoting *Fardig*, 2014 U.S. Dist. LEXIS 139359 at *3) (emphasis added).

This Court should apply the reasoning from the *Estrada* decision from the Northern District (in addition to the many other similarly-decided cases from other federal district courts in the Ninth Circuit) and compel Levin to individually arbitrate his PAGA claims, along with all of the other claims asserted in his Amended Complaint, as required by the Courier Terms and Conditions.  Any other course of action would frustrate the "overarching purpose of the FAA," which "is to ensure the enforcement of arbitration agreements according to their terms so as to facilitate streamlined proceedings."  *Concepcion*, 131 S. Ct. at 1748.

### B.       The Court should dismiss this action because all claims are subject to arbitration.

An action is properly dismissed for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) if all claims are arbitrable under the FAA.  *See Glaude v. Macy's Inc.*, No. 12-5179-PSG, 2012 U.S. Dist. LEXIS 171418, at *9 (N.D. Cal. Dec. 3, 2012) ("the court loses its subject matter jurisdiction over any claims subject to [an] arbitration clause") (citing *AT&T Techs.*, 475 U.S. at 648–50 (explaining how arbitration clauses affect district courts' jurisdiction)); *see also Lewis v. UBS Fin. Servs.*, 818 F. Supp. 2d 1161, 1165 (N.D. Cal. 2011) ("Where the claims alleged in a pleading are subject to arbitration, the Court may . . . dismiss the action.") (citing *Sparling v. Hoffman Constr. Co.*, 864 F.2d 635, 638 (9th Cir. 1988)).  Upon compelling all of Levin's causes of action to arbitration, this Court will cease to have jurisdiction and should dismiss.

### IV.    CONCLUSION

The "overarching purpose" of the FAA is to ensure that private arbitration agreements are enforced according to their terms.  *Concepcion*, 131 S. Ct. at 1748.  Levin repeatedly agreed to submit any dispute arising from his services as a courier to binding, individual arbitration.  The Court should therefore compel him to arbitrate all of the claims in his Amended Complaint and should dismiss this action with prejudice under Rule 12(b)(1).

1

2   Dated:  June 30, 2015                          Respectfully submitted,

3                                                  KEKER & VAN NEST LLP

4
                                          By:      /s/ Ashok Ramani
5                                                  ASHOK RAMANI
                                                   R. JAMES SLAUGHTER
6                                                  SIMONA A. AGNOLUCCI
                                                   ERIN E. MEYER
7
                                                   Attorneys for Defendant
8                                                  CAVIAR, INC. d/b/a TRY CAVIAR

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CAVIAR'S MOTION TO COMPEL INDIVIDUAL ARBITRATION AND MOTION TO DISMISS
Case No. 3:15-cv-01285-EDL
943265